# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL C. SERI,
     Plaintiff,

v.

TOWN OF NEWTOWN, ET AL.,
     Defendants.

CIVIL ACTION NO.
3:03cv1301 (SRU)

## RULING ON MOTION FOR SUMMARY JUDGMENT

This case arises out of the false arrest, prosecution, and conviction in Connecticut

Superior Court of plaintiff Michael Seri ("Seri"). Seri was wrongly convicted of public

indecency following an incident occurring at the Newtown Public Library in March 2001.

Defendant Town of Newtown ("Newtown") has moved for summary judgment on all counts

against it, including violations of the United States and Connecticut Constitutions, respondeat

superior, and indemnification. Defendant Michael Kehoe ("Kehoe"), the Newtown Chief of

Police, moves for summary judgment on all remaining counts against him.

## I.    Factual Background

On March 13, 2001 at approximately 6:45 p.m., a man indecently exposed himself to a

15-year-old girl ("Jane Doe") in the reference room of the Newtown Public Library. After

observing the man's lewd behavior, Jane Doe left the room to notify her mother of the incident.

Doe's mother immediately alerted the reference librarian on duty, Beryl Harrison, who called the

police. Defendant officers Robert Haas ("Haas") and Darlene Froehlich ("Froehlich") responded

to the call. Haas and Froehlich took descriptions of the perpetrator from Doe and her two friends

who witnessed the incident. Doe described the perpetrator as a 30-40 year-old male of average

height, with dark skin, black hair, who looked to be Mexican. Doe said he was wearing a gray

sweatshirt, dark blue sweatpants, and brown moccasin slippers. Her friends provided a similar description, adding that he had no facial hair and dark, slicked back hair. The victim also identified a stack of books the suspect had handled, which the officers took to obtain fingerprints.

Earlier that day, Seri phoned the library and spoke with Harrison about reserving several books on Greek tragedies. Seri arrived at the library at approximately 5:00 p.m. and spent about an hour perusing the books placed on reserve for him. At approximately 6:00 p.m., Seri returned the books to the reference desk and left the library. One of the books contained a piece of paper with his address and telephone number from when he called the library to reserve the books. On the basis of Harrison's statement that she believed the perpetrator and the person who reserved the books on Greek tragedies to be the same person, the officers took the information from the book slip and went to Seri's home to question him.

The officers conducted a twenty to thirty minute interview with Seri at his home. Haas's incident report from the evening described Seri as being approximately 5'8" tall, slight to medium build, with a goatee, and short to balding dark hair. Seri's mug shot reveals he also had prominent mutton chop sideburns. Seri told the officers he had been wearing a dark navy sweater and brown corduroy pants with hush puppy shoes and a backpack when he was at the library.

The following day Froehlich went on sick leave for approximately one month and no further investigation into the incident was conducted in her absence. The books were submitted to the State Forensic Science Laboratory for analysis on March 30, 2001. When Froehlich returned from sick leave, she re-interviewed Harrison, library page Philomena Conti, and Seri, but did not pursue an investigation into any other library patrons from the night of the incident.

The State's Attorney's office submitted an arrest warrant application prepared by Froehlich, with its approval, on June 27, 2001. The application did not contain any information about the victim and witnesses' physical description of the suspect, that the fingerprint analysis was still incomplete, or that Seri had never been identified by the victim or witnesses out of a photo or in person line up because Froehlich had never conducted one. Seri was arrested in July 2001 pursuant to the arrest warrant issued in reliance on that application.

After comparing the fingerprints twice in July and October 2001, the State Forensic Laboratory reported each time that it could not match Seri's fingerprints and the fingerprints taken from the library books. The fingerprints were never run against another suspect or any database prior to Seri's trial. At a photo line up in October 2001, the victim failed to identify Seri. Regardless, on December 19, 2001, a jury found him guilty of public indecency and impairing the morals of a child. The court sentenced Seri to a five-year term of imprisonment, suspended after six months, with a one-year term of home confinement following his release from custody, a five-year term of probation, and ordered him to register as a sex offender for a period of ten years.

While Seri was serving his six months of incarceration, his uncle, Richard Macko, an FBI agent, and his attorney, Hubert Santos, made several requests to the Newtown police department to run the fingerprints taken from the library books against a criminal database, but were refused. In the meantime, Angel LaPorte was arrested in June 2002 after exposing himself in a similar manner to a teenage girl at the Newtown Public Library. LaPorte matched the physical description of the perpetrator of the March 2001 incident and also had a prior history of sexual offenses.

In September 2002, following LaPorte's arrest, Seri's attorneys were able to obtain LaPorte's fingerprints through independent means and ran them against the fingerprints taken from the library books in March 2001. Finding the prints to be a conclusive match, Seri filed a motion for a new trial in January 2003. The Connecticut Superior Court granted Seri's motion in February 2003, vacating his conviction and dismissing all remaining charges against him.

## II.    Discussion

### A.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

B.    Municipal Liability For Violations of the United States Constitution

In count eight Seri brings a claim against Newtown pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his rights under the Fourth, Fifth, Sixth, Eighth, Tenth, and Fourteenth Amendments of the United States Constitution.  Seri alleges that Newtown violated his rights, through its employees, representatives, and agents, by its failure and/or refusal to promulgate and enforce appropriate guidelines, regulations, policies, practices or customs regarding, *inter alia*, the common characteristics of sexual offenders; the collection, preservation, and use of fingerprint evidence; the process of arresting a suspect; or how to communicate effectively with witnesses.  Seri further alleges that Newtown failed to properly train and/or supervise the defendant officers in the performance of their duties and that the town failed to discipline the officers for their failures to adhere to proper police procedure.

Newtown moves for summary judgment on the ground that Seri has failed to establish a viable section 1983 claim against it pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which held that municipalities are directly liable for the constitutional violations of its employees only where the plaintiff can demonstrate that the employee-tortfeasor was acting pursuant to an unconstitutional official policy or practice.  Newtown asserts that Seri can point to no unconstitutional official Newtown policy, practice, ordinance, or regulation that was the direct cause of his constitutional injury.  Seri defends the viability of his section 1983 claim on the ground that there is a genuine issue of material fact whether the alleged inadequacies of the town's policies and training or supervision of the defendant officers amounts to the requisite showing of deliberate indifference needed to establish municipal liability.

Section 1983 provides plaintiffs a means of remedying constitutional violations

perpetrated by persons acting under the color of law. There is no respondeat superior theory of liability under section 1983 – a municipality cannot be held liable simply for employing a constitutional tortfeasor. *Monell*, 436 U.S. at 691. Rather, a plaintiff pursuing a section 1983 claim against a municipality must demonstrate that his or her constitutional injury resulted from the employee's execution of an unconstitutional official policy or practice. *Id.* at 694.

Claims based on a failure to train or inadequate supervision can give rise to municipal liability under section 1983. *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the failure of municipal policymakers to remedy the problem can be characterized as a deliberate or conscious choice. *Id.* at 389-90.

The Second Circuit has identified three requirements that a plaintiff must demonstrate before a municipality's failure to train or adequately supervise its employees can constitute "deliberate indifference" to its citizens' constitutional rights. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (citing *Harris*, 489 U.S. at 389-90). The plaintiff must show: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation," excluding rare or unforeseen events; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or

that there is history of employees mishandling the situation;"[1] and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights" because training and supervision resources should be concentrated on "those situations where employee misconduct is likely to deprive citizens of constitutional rights." *Id.* at 297-98 (quoting *Harris*, 489 U.S. at 390 n.10). At the summary judgment stage, a plaintiff "must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it *actually caused* the constitutional deprivation.'" *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)) (emphasis added).

In *Jenkins*, the Second Circuit rejected the plaintiff's argument that the mere fact of his unlawful arrest could sufficiently establish that the city failed to adequately train or supervise its police officers. *Id.* at 95. Crucially, the plaintiff failed to identify a "specific deficiency" in the city's training program that caused his false arrest. *Id.* "A training program is not inadequate merely because a few of its graduates deviate from what they are taught." *Id.* The court similarly rejected the plaintiff's contention that the mere fact that the police officers used an unconstitutionally suggestive line up procedure established the requisite showing of a failure to train or inadequately supervise, noting that the plaintiff could not "identify procedural manuals or training guides . . . [or] a particular aspect of police training or supervision that was responsible for how the lineups were conducted." *Id.* The court concluded that "personal experience, without more, is insufficient to prove deliberate indifference." *Id.* (internal quotations omitted).

---

[1] As an example, the court pointed to the need to train police officers on when they may employ deadly force against a fleeing suspect.

Similarly, Seri has difficultly establishing a viable *Monell* claim because he has not pointed to a specific deficiency in the Newtown Police Department's official policies and practices that caused his false arrest. Seri's primary contention is essentially that the botched investigation that lead to his unlawful arrest and conviction is sufficient evidence of Newtown's inadequate police training, bad hiring practices, or poor supervision. Like the plaintiff in *Jenkins*, however, Seri cannot rely on the mere fact that he was unlawfully arrested to demonstrate that Newtown failed to train or adequately supervise its officers. In order to survive summary judgment on this claim Seri must specifically identify a deficient practice or procedure that was the actual cause of his unlawful arrest.

To refute Seri's failure to train argument, Newtown has submitted excerpts from its police department manual showing that at the time of Seri's arrest, the department had procedures in place for, *inter alia*, conducting witness interviews; conducting show up, photographic, and line up identifications; establishing crime scene hierarchy among officers; conducting criminal investigations; making arrests; and testifying in court. Furthermore, Newtown had official hiring policies and standards in place, including that all successful applicants had to pass a polygraph test and a psychological exam, have no prior domestic violence and DUI arrests or convictions, and that they must attend and pass the State of Connecticut Police Officer Standards and Training course at the Connecticut Police Academy, which both Froehlich and Haas completed. Finally, Newtown has submitted the yearly training records for Froehlich and Haas to refute Seri's argument that Newtown failed to properly and adequately train them in proper policing techniques.

Seri has not cited any specific example in these training manual documents or police

training reports that amounted to a failure to train, let alone deviated from standard police practices, which caused the officers to falsely arrest him. Seri's expert on police procedures discusses the problems with Froehlich and Hass's investigation at length, but only makes conclusory statements regarding the alleged inadequacy of Newtown's police training and investigation procedures. There is no question that the actual police work and investigation in this case yielded the wrong suspect and resulted in Seri's unlawful arrest and conviction. However, absent a showing the town was deliberately indifferent to an obvious need for more adequate training, the absence of which was likely to result in constitutional deprivations, Newtown cannot simply be liable for its officers' failure to comply with the proper police procedures and techniques that were in place when Seri was arrested.

Conceding at the motion hearing that the failure to train argument was not his strongest argument, Seri asserted that municipal liability could be established under an alternative inadequate supervision theory – i.e., Newtown is liable for the deprivation of Seri's constitutional rights because it should have supervised Froehlich and Haas more closely. Relying on the Second Circuit's decision in *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995), which found a genuine issue of material fact on the issue of the city's inadequate supervision of an officer prone to excessive force, Seri argues that Newtown's failure to more closely monitor Haas, given his history of insubordination at his previous policing job twenty years earlier, amounted to the requisite deliberate indifference. Seri also contends that Froehlich's warrant application did not establish there was probable cause to arrest him, and therefore, Froehlich's supervisor Detective Sergeant Henry Stormer did not provide adequate supervision or review that application for proper substance.

Seri faces several obstacles in making an analogy between his case and *Vann*. First is the issue of notice. Unlike the police officer in *Vann*, who became the subject of a constant stream of excessive force complaints from the moment he was hired, *id.* at 1042-45, Haas has no similar record of consistent misconduct as a Newtown police officer. Seri has not pointed to any complaints about his police work after 1979 when he left the New Fairfield police department, let alone any type of misconduct from any of point in his career as a police officer that would give rise to municipal liability for a failure to more closely supervise him.[2] In the absence of any evidence showing that Haas was incompetently performing his job on such a consistent basis that keeping him on duty represented a deliberate indifference to the constitutional rights of its citizens, Newtown cannot be held liable for the allegedly negligent performance of his duties in this specific instance. Similarly, Seri has not pointed to any evidence in the record that would suggest that Froehlich had a history of submitting deficient warrant applications so that her failure in this instance could give rise to a genuine issue of material fact that Newtown was deliberately indifferent to the constitutional rights of its citizens by failing to institute procedures to ensure that Froehlich's warrant applications were more thoroughly reviewed.

---

[2] In his deposition, Haas admitted that he had insubordination issues while with the New Fairfield force – specifically, that he liked to make more vehicular stops than his superiors would have preferred. At the motion hearing, Seri contended that Haas was additionally cited for preparing untimely and inaccurate police reports while with New Fairfield, however, there is no evidence in the record of those additional citations. Even accepting these allegations as true for purposes of this motion, Seri has not established how these facts amount to a systematic failure to supervise, which in turn led to the constitutional deprivation at issue in this case. Although the reports he prepared that led to Seri's arrest were not completely accurate, there is no evidence on the record to support Seri's contention that Haas's failure in *this* instance to compile an accurate police report was the product of a failure to train or a systematic and customary failure to supervise that was so obvious that Newtown exhibited deliberate indifference by failing to remedy the problem by more closely supervising Haas's preparation of police reports.

Second, and most significantly, the plaintiff in *Vann* was able to point to a specific deficiency in the police department's procedures that directly resulted in his constitutional deprivation – a lack of follow-up supervision of so-called "problem officers" who were returned to full-time duty. *Id.* at 1050. Specifically, when a problem officer was returned to duty after receiving the requisite psychological evaluation and counseling, there was no procedure in place to red-flag or fast-track any new complaints against that officer. *Id.* Concluding that a reasonable jury could find that the need to more closely monitor problem officers when they returned to duty was "obvious," combined with the department's woefully low staffing levels dedicated to monitoring the department's problem officers, the court held there was a genuine issue of material fact on the issue of the city's deliberate indifference.

There is nothing in the record in this case to indicate that Froehlich or Haas was a habitual problem officer akin to the officer in *Vann* so as to put Newtown on notice that constitutional violations were likely to occur by keeping them on full time duty, nor has Seri pointed to any evidence raising a genuine issue of material fact on the issue of Newtown's deliberate indifference to an obvious failure or deficiency in the way it hired or supervised officers. Seri has also not established that it was official Newtown Police Department policy to do cursory warrant applications – at most, Stormer may have reviewed Froehlich's warrant application with less thoroughness than he should have. Other than Seri's own personal experience, there is no evidence in the record that would suggest that it was official police department policy to conduct cursory reviews of warrant applications. Relying on Stormer's deposition statement that he would have preferred to have more full-time detectives and other supervisory officers on staff, Seri further argues that the police force was understaffed and that

this creates an issue of fact on Newtown's deliberate indifference.   Not only does Seri cite no

case law supporting the proposition that failure to hire enough supervisors is sufficient to give

rise to *Monell* liability, but there is no evidence in the record to support a finding that the

Newtown police force was so chronically understaffed that constitutional violations were likely

to result.  Relying on the unique facts of this case alone, and construing them in the light most

favorable to Seri – that the investigation was delayed because Froehlich went on sick leave for a

month and no one took over in her absence, that her supervisor reviewed her warrant application

for typographical errors only, that Haas and Froehlich conducted a haphazard investigation,

which produced an incorrect outcome – is not enough to establish municipal liability.  As

alleged, those facts could certainly give rise to negligence claims against the officers, which

indeed remain pending, but do not indicate that those officers were operating pursuant to an

unconstitutional official policy, procedure, or custom, nor that they were so inadequately trained

or supervised that Newtown was deliberately indifferent for failing to remedy an obvious

deficiency.

Beyond the troubling facts of his own case, Seri has presented no evidence that can

establish a genuine issue of material fact that the problems that caused his constitutional

deprivation were so widespread that the failure to remedy them rises to the level of deliberate

indifference on the part of Newtown.  Absent a showing that Seri's arrest was the result of

chronic and systematic failures that transcend the his own injury at issue in this case, isolated or

anecdotal instances of poor policing cannot establish municipal liability.  In the absence of any

evidence demonstrating a causal connection between his unlawful arrest, conviction, and

incarceration and a specific deficiency in Newtown's official policies and procedures for police

training and supervision, Seri has failed to establish a viable *Monell* claim. Therefore, summary judgment is granted on count eight.

C.     <u>Municipal Liability for Violations of the Connecticut Constitution</u>

In count seven Seri brings an identical *Monell*-like claim against Newtown for violations of sections Seven, Eight, and Nine of the Connecticut Constitution. Newtown has moved for summary judgment on the ground that those sections of the Connecticut Constitution do not expressly authorize a cause of action against a municipality. Conceding that there is no direct authority from the Connecticut courts on the issue of municipal liability under those sections of the Connecticut Constitution, Seri nonetheless urges this court to adopt the reasoning of *Monell* and recognize a cause of action for municipal liability for violations of the Connecticut Constitution in the same manner that the Connecticut Supreme Court recognized the existence of a *Bivens*-type action (i.e., a suit for monetary damages against a state actor for constitutional torts) for violations of sections seven and nine of the Connecticut Constitution in *Binette v. Sabo*, 244 Conn. 23, 41-51 (1998). Because I conclude that Seri has failed to establish a viable *Monell* claim against Newtown for violations of the U.S. Constitution, I need not reach the question whether the Connecticut courts would recognize a similar claim against municipalities for violations of the Connecticut Constitution because that claim would also fail for the reasons stated above. Therefore, summary judgment is granted on count seven.

D.     <u>Claims Against Chief Kehoe in His Official Capacity</u>

In counts twelve and thirteen Seri asserts claims against Kehoe in his official capacity for

violations of the U.S. and Connecticut Constitutions.[3]  Newtown seeks summary judgment on all remaining claims against Kehoe on the ground that claims against municipal officials in their official capacity are actually claims against the municipality itself, making those claims duplicative.

Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself.  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable *Monell* claim against the municipality.  *Id.*  Because Seri has not established that he has a viable *Monell* claim for municipal liability against Newtown, his remaining claims against Kehoe must also fail.  Therefore, summary judgment is granted on counts twelve and thirteen.

E.    Newtown's Liability Under Connecticut General Statutes § 52-557n

In count nine Seri asserts that Newtown is directly liable, pursuant to Connecticut General Statutes § 52-557n, for its alleged failure to adequately train or supervise the defendant officers in the performance of their duties; its failure to institute sufficient policies, practices, procedures, and guidelines pertaining to: sex offenders, the importance of fingerprint information, the preservation of fingerprint information, the process of matching latent fingerprints retrieved from objects to a suspect's fingerprints, the proper investigation and identification of retrieved fingerprints, the finding of probable cause necessary to arrest, the effectuation of arrests, and proper police conduct generally, its encouragement of a policy of non-

---

[3] I previously granted summary judgment on all counts against Kehoe in his individual capacity at the motion hearing held June 19, 2007.

enforcement of existing rules pertaining to methods of arrest and the conduct of police officers, and its failure to take proper disciplinary action against the defendant officers.  Complaint ¶ 77(Second).[4]  Newtown seeks summary judgment on the ground that the claim is barred by governmental immunity under section 52-557n(a)(2)(B) because a police investigation is a discretionary act and that the traditional common law exceptions to municipal employee immunity do not apply to municipalities.[5]  Seri contends that the common law "identifiable person/imminent harm" exception to municipal employees' discretionary act immunity should also apply to Newtown's municipal immunity in this case.

Section 52-557n states that a "political subdivision of the state shall be liable for damages to person or property caused by: (A) the negligent acts or omissions of such political subdivision."  However, that statute also provides immunity from liability for that political subdivision where the "negligent acts or omissions . . . require the exercise of judgment or discretion."  Conn. Gen. Stat. § 52-557n(a)(1)(A), (a)(2)(B).  It is well-established in Connecticut that the operation of a police department is as a discretionary governmental function and that the negligent acts or omissions connected to its operation do not give rise to municipal liability. *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 179-80 (1988).  Thus, unless there is an applicable exception to this statutory immunity, Newtown cannot be held directly liable for its

---

[4] Count nine contains two paragraphs numbered "77."  "77(Second)" refers to the second of those paragraphs.

[5] In its motion for summary judgment Newtown also argued that the claim was barred because Seri was premising it on an intentional tort theory, citing Seri's use of the word "malice" in that count.  Connecticut General Statutes § 52-557n(a)(2)(A) bars claims against a municipality based on intentional or willful conduct by an employee, officer, or agent.  Because Seri dropped that language from his most recent complaint, I deem that argument to be moot.

allegedly negligent acts or omissions, all of which were allegedly done in connection with the operation of its police department.

Municipal employees are also immune from liability for the performance of their discretionary acts. *Evon v. Andrews*, 211 Conn. 501, 505 (1989). However, Connecticut recognizes three exceptions to a municipal employee's discretionary act immunity: (1) "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to an imminent harm" (hereinafter, the "identifiable victim/imminent harm exception"); (2) "where a statute specifically provides for a cause of action against a municipality or municipal official for failing to enforce certain laws;" and (3) "where the alleged acts involve malice, wantonness, or intent to injure, rather than negligence." *Purzycki v. Town of Fairfield*, 244 Conn. 101, 108 (1998).

To establish that the identifiable victim/imminent harm exception applies, a plaintiff must show: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to harm." *Doe v. Petersen*, 279 Conn. 607, 616 (2006). Those "core requirements of the 'imminent harm' exception are analyzed conjunctively," so that to prevail, a plaintiff must demonstrate all three elements. *Id.* at 620. In addition, the first two elements must be evaluated with reference to one another. *Id.* "An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person." *Id.* at 620-21. An "imminent harm" is one that carries a significant and foreseeable risk of occurring. *Purzycki*, 244 Conn. at 110.

Newtown contends that the three common law exceptions to a municipal employee's

discretionary act immunity do not apply to claims against the municipality itself.  Prior to the Supreme Court's decision in *Doe v. Petersen*, that was the prevailing view.  Before *Petersen*, Connecticut courts generally held that, as a matter of law, the identifiable victim/imminent harm exception to discretionary act immunity was not applicable to claims against municipalities.  *See, e.g.*, *Disabella v. Town of West Hartford*, 2005 WL 3370454, at *5 (Conn. Super. Ct. 2005) (citing cases).  Those cases all relied on the Connecticut Supreme Court's decision in *Pane v. City of Danbury*, which contained a footnote stating that the identifiable victim/imminent harm exception was applicable "to a municipal *employee*, as distinct from the municipality itself."  267 Conn. 669, 677 n.9 (2004) (emphasis in original).  Connecticut courts generally interpreted that language to mean that "the exceptions to government immunity are not applicable to claims against the municipality itself, but rather, they apply only to claims against the municipal employee."  *Disabella*, 2005 WL 3370454, at *5.

The conclusion that the identifiable victim/imminent harm exception does not apply to municipal immunity has since been called into question by the Connecticut Supreme Court's decision in *Doe v. Petersen*.  In *Petersen* the town of Wethersfield was the only remaining defendant; the court's analysis of whether the identifiable victim/imminent harm exception therefore necessarily applied to the issue of municipal liability.  279 Conn. at 609, 612 n.2.  The court explained at the outset that although municipalities are statutorily immune from negligence liability resulting from the discretionary acts of their employees, "[a]n exception to this immunity exists – *and municipalities are exposed to possible liability* – when the 'circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.'"  *Id.* at 609 (emphasis added) (quoting *Evon,* 211 Conn. at

-18-

506).  Because the plaintiff conceded that only the identifiable victim/imminent harm exception was applicable, the court stated its inquiry was focused on "the scope of this exception and whether it shields *the town* from liability" for the employee's alleged negligence.  *Id.* at 616 (emphasis added).  Although the court ultimately decided that exception was not available in that particular case, and that the town was thus immune from negligence liability for it's employee's discretionary act, it never stated that the exception was *per se* inapplicable to claims against municipalities.  *Id.* at 609, 616.

Since the *Petersen* decision, the prevailing opinion of the lower courts in Connecticut appears to be in favor of applying the identifiable victim/imminent harm exception to municipal immunity, too.  *See, e.g.*, *Delgado v. City of New Haven*, 2007 WL 611484, at *3 (Conn. Super. Ct. 2007) (noting that *Petersen* "suggests that the common-law exceptions to governmental immunity are applicable to the city directly"); *Susman v. Town of East Haven*, 2007 WL 1532713, at *5 (Conn. Super. Ct. 2007) (citing *Petersen*, the court chose "to recognize the imminent harm exception as it applies to municipalities"); *Rasmus v. Town of Plainville*, 2006 WL 3317522, at *9-11 (Conn. Super. Ct. 2006) (applying the identifiable victim/imminent harm exception to the town's immunity).

At least one superior court has declined to apply the exception to claims against municipalities, citing the longstanding policy to abrogate municipal liability only on the basis of a statute.  *See Miller v. City of New Haven*, 2007 WL 2245736, at *2.  The court reasoned that "the better view is that in light of the long established rule of exempting municipalities from discretionary acts liability, the legislature has manifested its intention to abrogate governmental immunity only on the limited basis expressed in § 52-557n and the [identifiable victim/imminent

harm] exception may not be asserted directly against a municipality." *Id.*

I need not resolve the issue of whether the identifiable victim/imminent harm exception to municipal employee immunity applies equally to municipality immunity because, even assuming that exception *does* apply to municipality immunity, Seri has not alleged any facts that would render the identifiable victim/imminent harm exception applicable to his claims against Newtown as a matter of law. Specifically, Seri has failed to demonstrate how he was identifiable as a potential victim of a specific imminent harm that was the result of those allegedly negligent actions on the part of Newtown.

In *Petersen*, the plaintiff's only remaining negligence claim against the town was that "the town, its employees, servants or agents 'failed to acknowledge, respond to or investigate [the] plaintiff's report of Petersen's conduct.'" 279 Conn. at 611 n.3 (quoting the complaint). The plaintiff alleged that she had been sexually assaulted by James Petersen, a town employee, while attending a town-sponsored tennis camp and that she had approached Petersen's supervisor, William Pitkin, to speak with him about the incident but that Pitkin refused to hear her out. *Id.* at 609-10. The negligence claim against the town arose out of Pitkin's failure to respond to or investigate the plaintiff's allegations about Petersen. *Id.* at 611 n.3. The plaintiff alleged that "she suffered terror and long term psychological injury as a result of Pitkin's response to her failed attempt to inform him of the alleged assault." *Id.* at 619 (internal quotation omitted).[6] Like Seri, the plaintiff in *Petersen* maintained that the identifiable victim/imminent harm exception applied to abrogate the town's statutory discretionary act immunity. The town

_____

[6] Notably, the plaintiff did not seek to hold the town directly liable for her underlying injury – the sexual assault – but rather the injury that resulted from its own role in negligently responding to her complaint and report of sexual assault.

argued that that exception was inapplicable because the plaintiff could not identify any harm that was sufficiently limited in duration or scope, nor was her evidence sufficient to establish that Pitkin should have anticipated that his failure to respond or investigate her allegations would subject her to imminent harm. *Id.* at 613.

Because it was the only remaining claim in the case, the court focused on the scope of the identifiable victim/imminent harm exception and whether it abrogated the town's immunity from liability for Pitkin's allegedly negligent actions. *Id.* at 616. It stated that "[t]o prevail, the plaintiff must demonstrate that she was an identifiable person *and* was subject to imminent harm *and* that a public officer's conduct subjected her to that harm, despite the apparent likelihood of harm to her." *Id.* at 620 (emphasis in original). It explained further that the "identifiable person" and "imminent harm" elements had to be evaluated with reference to each other so that "[a]n allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm" and "the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person." *Id.* at 620-21. It concluded that the exception was inapplicable to the plaintiff's claim because the record showed that she had never actually told Pitkin of about the alleged assault and therefore, "it could not have been apparent to him that his response to the plaintiff's concerns would have been likely to subject her to a risk of harm." *Id.* at 619-20. Thus, because she failed to satisfy the imminent harm element, it was irrelevant whether she could successfully establish that she was an identifiable person or not. *Id.* at 621 ("For the purposes of the 'imminent harm' exception, however, it is impossible to be an identifiable person in the absence of any corresponding imminent harm.").

Seri has not demonstrated, for any of his direct claims of negligence against Newtown,

how he was an identifiable victim nor how he was subject to imminent harm.  Specifically, he has not shown how, even if all the allegations were proven, the town would have been able to identify Seri as a identifiable potential victim of a specific imminent harm.  Because the nature of his allegations against the town are so generalized in terms of their potential victims and resulting type of harm, Seri has failed to establish how that exception would apply to abrogate Newtown's immunity under section 52-557n.

For instance, Seri alleges that the town failed to adequately supervise or train the defendant officers in a variety of specific areas, including "the common characteristics of a sexual offender, the importance of fingerprint information, the proper manner of taking a suspect's fingerprints in order to match latent fingerprints retrieved from objects, the proper investigation and identification of retrieved fingerprints, finding probable cause to arrest, the effectuation of arrests, and general conduct as arresting police officers."  Seri also alleges that Newtown "failed to have in place, force and effect policies, practices, procedures and guidelines pertaining" to those specific areas of policing.  In addition, Seri contends that Newtown had insufficient policies on the communication, control, and/or supervision of an arrest so as enable officers "to take timely and reasonable measures to prevent" violations of police procedures and the rights of suspects; that Newtown promoted and/or encouraged Chief Kehoe's alleged policy favoring the non-enforcement of existing rules and policies related to methods of finding probable cause to arrest and the conduct of police officers generally; and finally, that Newtown failed to take proper disciplinary action against the defendant police officers for their allegedly negligent or intentional unlawful conduct.  Absent from those allegations is any indication of how: (1) *Seri* was the identifiable victim of that negligence, or (2) that the harm that befell him

was the apparent and imminent result of that negligence.

To be sure, failing to supervise or educate its police officers on the subject of sex offenders, the proper manner of taking fingerprints, or the meaning of probable cause is likely to eventually result in *some* harm to *some* person. The problem for Seri is that, even assuming those allegations are true, it does not necessarily follow that *he* would be the victim of the Newtown police department's inadequate training or supervision, nor that the result of such negligence would be the false arrest and prosecution of an innocent person accused for indecent exposure at the public library, i.e., the specific harm that occurred in this case.

Connecticut law demands more specific circumstances for the identifiable victim/imminent harm exception to apply. For example, in *Shore v. Town of Stonington*, the Connecticut Supreme Court concluded that the identifiable victim/imminent harm exception did not apply to abrogate a police officer's discretionary act immunity where he did not arrest a driver that appeared to be intoxicated and who later killed another person in a vehicular accident. 187 Conn. 147, 150, 157 (1982). The exception was not applicable because the plaintiff failed to demonstrate how "during his encounter with [the intoxicated driver], [the police officer] could have been aware that [the intoxicated driver]'s conduct threatened an identifiable victim with imminent harm." *Id.* at 154. As analyzed by the *Petersen* court, "[b]ecause the police officer could not have been aware that the likely consequence of his action was a fatal collision, no clear and unequivocal duty to act to prevent that collision existed, and abrogation of discretionary act immunity under the 'imminent harm' exception was inappropriate." 279 Conn. at 617 (citing *Shore*, 187 Conn. at 154).

Similarly, in *Evon*, the Connecticut Supreme Court determined the identifiable

-23-

victim/imminent harm exception was not applicable where the plaintiffs alleged that Waterbury employees, officers, or agents had negligently failed to do enough to prevent a fire that broke out in a multifamily home, such as conducting appropriate inspections or enforcing fire safety ordinances and laws.  211 Conn. at 504, 508.  The court concluded that the residents of the building were not "identifiable victims," but rather a "class of possible victims of an unspecified fire that [might] occur at some unspecified time in the future."  *Id.* at 508.  It further concluded that there was no "imminent harm" because "the fire could have occurred at any future time or not at all." *Id.*

Like the plaintiffs in *Shore* and *Evon*, Seri has failed to demonstrate how Newtown's negligence subjected Seri, individually, to a specific, imminent harm.[7]  For example, the failure to properly train its officers and the failure to promulgate and enforce proper policing procedures, as Seri has alleged, would potentially subject *all* the residents of Newtown to illegal police procedures of an *infinite* variety.  Seri also alleges that the town failed to take appropriate disciplinary action against its police officers who acted unlawfully.  Even assuming that Seri was an identifiable person to those officers whose own actions subjected him to a foreseeable and imminent harm, Seri's direct claims for liability against the *town* arises out of its failure to take disciplinary action against the officers.  Because it would not be apparent to any public official that the result of not disciplining its officers would be to subject Seri to a significant and foreseeable risk of imminent harm, this allegation is also insufficient to bring it within the ambit

_____

[7] Seri relies heavily on Newtown's purported concession that Seri was an "identifiable person."  However it appears that Newtown was only conceding that point in relation to the identifiable person/imminent harm exception as it applies to the negligence claims against the defendant officers, and not the claims against Newtown directly.

of the identifiable person/imminent harm exception as a matter of law. It simply does not logically follow that had such discipline occurred, the injuries that Seri suffered would have been avoided.

Seri has not alleged that Newtown, acting through a specifically identified public official, was on notice that Seri was individually subject to a specific and imminent harm so that it was in a position to make a decision that specifically impacted Seri and caused the resulting harm. Therefore, I conclude that the identifiable person/imminent harm exception to statutory immunity is not applicable as a matter of law to the claims for direct liability against Newtown. Because its discretionary immunity would apply to all the claims raised against Newtown, summary judgment is granted on count nine.

F.    Respondeat Superior Liability

In count ten Seri alleges that Newtown is legally liable for all the injuries he suffered as a result of the defendants' actions under a respondeat superior theory of liability. At the motion hearing, Seri conceded that section 52-557n abrogated all common law liability against a municipality, including respondeat superior liability. Therefore, summary judgment is granted on count ten.

G.    Indemnification Pursuant to Connecticut General Statute § 7-465

In count eleven Seri asserts that Newtown may be required to indemnify the defendant officers pursuant to Connecticut General Statutes § 7-465. Section 7-465 legally obligates a municipality to pay all sums that its employees are "obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property," provided the employee's actions were not

"wilful or wanton" and he or she was acting within the scope of his or her employment.

Newtown does not dispute that it may be required to indemnify the defendant officers if damages are awarded to Seri in this lawsuit. Therefore, because the suit remains pending against the individual officers and the issue of damages has not yet been decided, summary judgment on count eleven is denied.

**III.    Conclusion**

For the foregoing reasons, Newtown's motion for summary judgment (doc. # 131) is GRANTED in part and DENIED in part.

It is so ordered.

Dated at Bridgeport, Connecticut, this 28th day of August 2008.

 /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge